UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
════════════════════════════════

THANG T. NGUYEN,

               Petitioner,

    -vs-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility

               Respondent.
════════════════════════════════

**DECISION AND ORDER**
**No. 05-CV-0855**

## I. INTRODUCTION

Petitioner, Thang T. Nguyen ("Petitioner" or "Nguyen"), filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of murder in the second degree (felony murder) (N.Y. Penal Law ("Penal Law") § 125.25(3)), two counts of burglary in the first degree (Penal Law § 140.30(1), (4)), and three counts of robbery in the first degree (Penal Law § 160.15 (1), (2), (4)).  Judgment was entered on August 27, 1998, in New York State Supreme Court, Monroe County (Cornelius, J.).  The Appellate Division, Fourth Department affirmed the conviction[1], and the New York State Court of Appeals denied further review. People v. Nguyen, 309 A.D.2d 1269 (4th Dept. 2003), *leave denied*, 2 N.Y.3d 746 (N.Y. 2004).

_____

[1] The Appellate Division also modified Nguyen's sentence so that the sentence imposed for robbery in the first degree ran concurrently with the sentences imposed for second degree murder and first degree robbery.

-1-

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By indictment number 92-0599A, Petitioner was charged with two counts of second degree murder (Penal Law § 125.25 (1), (3)), attempted murder in the second degree (Penal Law §§ 110.00, 125.25 (1)), two counts of burglary in the second degree (Penal Law § 140.30 (1), (4)), and six counts of robbery in the first degree (Penal Law § 160.15 (1), (2), (4)), arising out of the following incident. In the fall of 1991, Petitioner travelled to Rochester, New York from Oregon to cook at the Saigon Restaurant, owned by Chung Lam and his wife, Thu Lam. (T.[2] 619-622). The Lam's purchased Petitioner's plane ticket and arranged for a place for him to stay, while they decided if he would work in the restaurant permanently. (T. 649-650). When he arrived, he stayed at the Lam's house, at 72 Veronica Drive in Rochester, for one night. (T. 622).

The Lam's soon decided not to hire Petitioner permanently, because they did not like his cooking. (T. 623-4). Petitioner had worked for the Lam's for approximately one week prior to his termination. (T. 625). The Lam's provided Petitioner with $1,000 and a plane ticket back to Oregon. (T. 625).

In January 1992, Petitioner and Thoan Van Luc ("Van Luc") visited Sang Ngo ("Sang") in Wichita, Kansas. Petitioner asked Sang to come to New York with him and Van Luc to assist them in robbing the Lam's. (T. 929-30). Petitioner and Van Luc stayed with Sang in Wichita for two days, and the three men and Sang's brother,

---

[2] "T." refers to the state court trial transcript.

Vu Ngo ("Vu"), left for New York on January 22, 1992, in Sang's blue Honda Accord. (T. 930-33). The men brought three hand guns with them, a 9 mm., a .38, and a .380. (T. 932). On the way to New York, the men stopped and purchased bullets for one of the guns. (T. 934).

_____On the evening of January 23, 1992, the four men arrived in Rochester, and rented a room at the Downtown Motor Lodge. (T. 934-5). The men stayed at the hotel for two nights while they planned the robbery. (T. 935-40). They drove past the Lam's home and restaurant several times, Petitioner instructed Van Luc on the layout of the house, and Van Luc drew a map of the house. (T. 935-940, 942). Then, in the late Saturday night early Sunday morning hours, on January 26-27, the men packed up their belongings at the hotel, planning to leave the state after committing the robbery. They left the hotel in Sang's car, brought the three guns, and drove to the Lam's house. (T. 942, 944-5). Petitioner carried the 9mm, Vu carried the .38, and Sang carried the .380. (T. 944). Sang parked the car about a block away from the Lam's house, and Petitioner and Vu went to the house and opened the back door by cutting a wire. (T. 945-7). Van Luc then went into the house with Petitioner and Vu. (T. 947).

Mrs. Lam was awakened by people screaming at the stairs, two of the men then entered her bedroom and demanded money and gold. (T. 628). Mrs. Lam heard gunshots and saw her husband wrestling with a masked man in the hallway. (T. 628-31). She came out into the hallway and one man took a necklace off her neck and the neck

of her brother-in-law, who was also staying in the Lam's house that night. (T. 630-31). One man then pushed Mrs. Lam, her children, and her brother-in-law into her daughter's bedroom and told them to lay down. (T. 563, 630). This man had a gun to Mrs. Lam's daughter's head. (T.560-62). The man continued to demand money and jewelry from Mrs. Lam and at one point fired his gun and hit a wall. (T. 563, 631). Mrs. Lam testified that she also gave the man a diamond ring and diamond earrings. (T. 636). The man then left the bedroom where Mrs. Lam and her children were, and Mrs. Lam instructed her children to look for help as she went out of the room to help her husband (T. 636). Another gunshot was heard, and Mrs. Lam could still see someone with her husband, who was injured and laying in the hallway. (T. 632). The man with her husband cursed in Vietnamese and Mrs. Lam recognized the voice as Petitioner's. (T. 633).

Meanwhile, Sang, still outside, heard the gunshots and ran into the house. (T. 947-8). Sang heard yelling and crying and saw Petitioner wrestling with Mr. Lam. (T. 949). Sang tried to help Petitioner, but was shot in the stomach accidentally. (T. 949-50). Sang crawled into a bedroom where an old woman was crying and praying, and then heard two more gunshots. (T. 950-52). Sang called for his brother Vu to help him, and Vu called for Petitioner and Van Luc to carry Sang out to the car. (T. 953-55). The men then left the Lam's house.

Initially, Petitioner, Vu, and Van Luc wanted to take Sang to another state, but Sang insisted they take him to the hospital.

(T. 956). When they arrived at Rochester General Hospital ("RGH"), Sang instructed the three men to throw the guns out the window. Id. The weapons and some of the stolen jewelry were later recovered in the parking lot outside of the emergency department at RGH. (T. 885-897, 761-763). Sang's brother Vu stayed with him at the hospital, and Tuyen and Mrs. Lam later identified Vu as the man that ordered them to stay in the bedroom. (T. 571, 640).

After the men had left the house, the Lam's daughter, Tuyen heard her mother scream for her father, and she tried to call 911 but the phone line had been cut. (T. 565). She could see her father lying on the ground in the hallway. Id. Mrs. Lam then instructed Tuyen to go to their neighbors house to get help. (T. 566). As she walked past her mother and father to go downstairs she saw her father had been shot twice in the hip and once in the head and her mother was screaming for socks and cigarettes to seal up the wound. (T. 566-569). Mrs. Lam later identified Petitioner as the man who had shot her husband. Chung Lam died of a gunshot wound to the head. (T. 1192-1198).

Petitioner left the United States and was apprehended nearly six years later, in December 1997, by members of the Vietnamese Police in the Socialist Republic of Vietnam. He was later turned over to the United States Government, via agents from the Federal Bureau of Investigation in Bangkok, Thailand. He was then transported back to the United States and arrested by members of the Irondequoit Police Department at the John F. Kennedy Airport in

New York City. <u>People v. Nguyen</u>, 177 Misc.2d 16 (N.Y. Sup. Ct. Monroe County 1998).

Following a jury trial, Petitioner was convicted of second degree murder (felony murder), two counts of first degree burglary, and three counts of first degree robbery.  He appealed his conviction to the Appellate Division, Fourth Department, arguing that (1) the sentence imposed was improper and it was harsh and excessive; (2) the burglary and robbery convictions were "inclusory concurrent counts" of the felony murder charge under New York Law, and should be dismissed; (3) he received ineffective assistance of counsel; (4) his seizure in Vietnam without any extradition procedures violated due process;(5) the verdict was legally insufficient and against the weight of the evidence; and (6) he was deprived of a fair trial because the prosecution failed to preserve fingerprint evidence. <u>See</u> T. Appendix A.  The Appellate Division affirmed defendant's conviction, after modifying his sentence, and held that (1) Nguyen failed to preserve his claim that he was denied a fair trial by the prosecutions failure to preserve fingerprint evidence; (2) he was not denied effective assistance of counsel; (3) his seizure in Vietnam did not violate due process under either the New York State or Federal Constitutions ; (4) the burglary and robbery convictions were not "inclusory concurrent counts" under New York State Law; (5) Nguyen failed to preserve his claim that the evidence was legally insufficient; (6) the verdict was not against the weight of the evidence; (7) the sentence should be modified so that the sentence imposed for the robbery

convictions ran concurrently with the sentences imposed for second degree murder and burglary; and (8) the sentence was not otherwise harsh and excessive. People v. Nguyen, 309 A.D.2d 1269 (4th Dept. 2003), *modified by* 2 A.D.3d 1485 (4th Dept. 2003). The New York State Court of Appeals denied further review. People v. Nguyen, 2 N.Y.3d 746 (N.Y. 2004).

Petitioner then made a motion for a writ of error coram nobis, arguing that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the following three issues on appeal: (1) the trial court's allegedly improper accessorial liability charge under Penal Law § 20.00; (2) ineffective assistance of counsel based on trial counsel's failure to object to the accessorial liability charge; and (3) the trial court's allegedly improper submission of an annotated verdict sheet. See T. Appendix K. The Appellate Division, Fourth Department denied the motion, and the New York State Court of Appeals denied further leave to appeal. People v. Nguyen, 20 A.D.3d 947 (4th Dept. 2005), *leave denied* 5 N.Y.3d 833 (N.Y. 2005).

Petitioner then made a motion to set aside the verdict pursuant to N.Y. Criminal Procedure Law ("C.P.L.") § 440.10. Petitioner argued that he received ineffective assistance of counsel because, (1) pre-trial, counsel did not adequately advise him regarding the plea offer; (2) counsel failed to object to the trial court's accessorial liability charge, and later clarification to the jury that the charge applied to the case; (3) counsel failed to obtain a finger print expert; (4) counsel failed to raise the

issues in Nguyen's C.P.L. § 330.30 motion in a timely manner. <u>See</u> T. Appendix N-O. Petitioner also argued that the prosecutor improperly used perjured testimony regarding the fingerprint evidence. <u>Id.</u> The N.Y. Supreme Court denied Petitioner's motion, holding that (1) Nguyen did not adequately support his claim for ineffective assistance of counsel in the plea-bargaining process with evidence that he would have accepted the plea offered if advised differently; (2) Nguyen's other claims for ineffective assistance of counsel and prosecutorial misconduct were procedurally barred under C.P.L. § 440.10 (2) (c), because they were matters of record that should have been brought on appeal. <u>See</u> T. Appendix R. Petitioner did not seek leave to appeal this order.

Lastly, Petitioner filed a second petition for a writ of error coram nobis claiming ineffective assistance of appellate counsel, on the grounds that appellate counsel failed to raise the procedurally barred issues that Nguyen raised in his C.P.L. § 440.10 motion. <u>See</u> T. Appendix S. His petition and further leave to appeal to the New York State Court of Appeals were denied. <u>People v. Nguyen</u>, 30 A.D.3d 1114 (4th Dept. 2006), *leave denied*, 7 N.Y.3d 818 (N.Y. 2006).

### III. <u>GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW</u>

**A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in

-8-

state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's

application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. §2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal

claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

## C.    The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (Citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" <u>Dunham</u>, 313 F.3d at 729 (quoting <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariable be resovled first; only that is ordinarily should be[,]'" (quoting <u>Lambrix</u>, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable

against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

### IV. <u>PETITIONER'S CLAIMS</u>

### A. <u>Prosecutorial Misconduct</u>

#### 1. Failure to Preserve Fingerprint Evidence

Petitioner claims that the prosecutor erred in failing to preserve fingerprint evidence, denying him a fair trial. Pet[3]. Appendix ¶ IV (1). Petitioner raised this claim on direct appeal, and the Appellate Division held that it was not preserved for review pursuant to C.P.L § 470.05(2). <u>Nguyen</u>, 309 A.D. 2d at 1270. Because the Appellate Division's decision rests on an adequate and independent state procedural ground, Petitioner is barred from bringing this claim on federal habeas review. <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003); <u>Coleman v. Thompson,</u> 501 U.S. 722, 729 (1991). Petitioner has not established the requisite cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, therefore, his claim is denied. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see</u> <u>also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992).

#### 2. The Prosecutor's <u>Brady</u> Violation and Knowing Use of Perjured Testimony

Petitioner also claims that the prosecutor knowingly allowed a witness to give false testimony, failed to later correct the false testimony, and suppressed evidence that would have allowed

---

[3] "Pet." refers to Nguyen's Petition for a Writ of Habeas Corpus.

Petitioner to discover that the testimony was false. Pet. Appendix ¶ IV (9); See also T. Appendix O. Petitioner raised this claim in his C.P.L. § 440.10 motion to set aside the verdict, and the Supreme Court, Monroe County, held that the claim was procedurally barred under C.P.L. § 440.10 (2) (c), because the issue was a matter of record that should have been raised on direct appeal. See T. Appendix R. Petitioner did not seek leave to appeal this decision to the Appellate Division, therefore, his claim is unexhausted. However, because it is clear that Petitioner is procedurally barred from further asserting this claim in the New York Courts, it is deemed exhausted, but procedurally barred. See Grey v. Hoke, 933 F.2d 117, 120-21 (2nd Cir. 1991). Petitioner has not established the requisite cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, therefore, his claim is denied. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

**B. Unconstitutional Seizure in Vietnam**

Petitioner next claims that he was denied due process because he was seized in Vietnam without extradition procedures. Pet. Appendix ¶ IV (3). Defendant first raised this claim in a pre-trial motion to dismiss the indictment. The Monroe County Supreme Court, Cornelius J., held that the defendant was not deprived of state or federal constitutional rights based on the means by which he was brought before the court, because he was afterward lawfully detained by superior court warrant and indictment, and the Supreme

Court's decision to proceed to trial. Nguyen, 177 Misc.2d at 20 (citing U.S. v. Alvarez-Machain, 504 U.S. 655 (1992) for the principle that jurisdiction over a defendant may be proper and due process is satisfied, notwithstanding the means by which he was brought before the court, if the defendant is subsequently convicted after a fair trial). The Appellate Division upheld the decision of the Supreme Court, and the New York State Court of Appeals denied further review. Nguyen, 309 A.D.2d 1270, *leave denied*, 7 N.Y.3d 818. This Court finds that the state court decision was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Therefore, Petitioner's habeas claim is denied on this ground.

The Supreme Court has held that, where an extradition treaty has not been invoked, a defendant may properly be tried in the United States even where the defendant's presence has been procured by forcible abduction. Alvarez-Machain, 505 U.S. at 661-2 (citing Ker v. Illinois, 119 U.S. 436 (1886); Frisbie v. Collins, 342 U.S. 519 (1952)). The Supreme Court explained that "due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." Id (quoting Frisbie, 342 U.S. at 522). Additionally, with respect to extradition procedures, the Supreme Court has held that a treaty of extradition will not guarantee a fugitive asylum in another state, but instead creates procedures by which a person

must be surrendered to a state where he committed a crime for which he may not seek asylum. See Ker, 119 U.S. at 442. Extradition procedures, do not apply where an extradition treaty is not invoked, or where one does not exist. Alvarez-Machain, 505 U.S. 664-65.

In this case, Nguyen fled to the Soviet Republic of Vietnam following the incident that led to his conviction. He was apprehended six years later by Vietnamese officials, questioned, and later turned over to United States officials in Thailand. He was then returned to the United States and arrested at the John F. Kennedy Airport in New York City. Because the United States does not have an extradition treaty with Vietnam, Nguyen cannot claim that his seizure was in violation of any extradition procedures. Additionally, after reviewing the record, it is clear that Nguyen was convicted after a fair trial. Therefore, this Court finds that Nguyen was not denied due process of law based on the means by which he was brought before the New York Courts, and his claim for habeas relief on this ground is denied.

## C. Improper Sentence

Petitioner next claims that he received an improper sentence.[4] Pet. Appendix ¶ IV (4). Petitioner raised this claim on direct appeal, and the Appellate Division modified his sentence so that

---

[4] Nguyen was sentenced as follows: 25 years to life for second degree murder; 12.5-25 years for each count of the two counts of burglary in the first degree to run concurrently with each other and with the murder charge; 8 1/3-25 years for one count of robbery in the first degree and 12.5-25 years for the 2 remaining counts of robbery in the first degree to run concurrently with each other, but consecutive to the sentences for burglary and murder.

the first degree robbery sentences ran concurrently with the sentence for second degree murder and burglary. <u>People v. Nguyen</u>, 309 A.D.2d 1269 (4th Dept. 2003), *modified by* 2 A.D.3d 1485 (4th Dept. 2003). The Appellate Division also held that his sentence, as modified, was neither harsh nor excessive. <u>Id.</u>

It is well-settled that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (holding that, "[n]o federal Constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Because petitioner's sentence, as modified, falls within the range prescribed by the Penal Law § 70.00, he does not have standing to raise this issue in his habeas corpus petition. Therefore, his claim for federal habeas relief is denied on this ground.

## D. <u>Inclusory Concurrent Counts</u>

Petitioner next claims that his convictions for first degree burglary and robbery were improper because they were "inclusory concurrent counts" of second degree murder (felony murder) under C.P.L. § 300.30 (4). Pet. Appendix ¶ IV (5). The substance of Petitioner's claim is that, pursuant to C.P.L. § 300.30 (4) and § 300.40 (3)(b), burglary and robbery were lesser included offenses of the felony murder charge, and his conviction of the greater offense precluded a conviction of the lesser included offenses. Petitioner raised this claim on direct appeal, and the Appellate Division held that the burglary and robbery counts were not lesser

included offenses and thus not subject to dismissal as inclusory concurrent counts under C.P.L 300.30(4). Nguyen, 309 A.D.2d at 1270.

Petitioner does not present a claim upon which federal habeas relief may be granted. It is well settled that federal habeas relief is proper only where a conviction has violated a federal law. 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); See also Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Because this is an issue of state law, and Petitioner has not established that any federal or constitutional right was violated by his conviction for felony murder and the underlying felonies, his claim for habeas relief is denied. See id.

**E. Sufficiency and Weight of the Evidence**

Petitioner next claims that the evidence was legally insufficient and that the verdict was against the weight of the evidence. Pet. Appendix ¶ IV (6). Petitioner raised both claims on direct appeal. The Appellate division held that his claim for insufficient evidence was not preserved for review and the verdict was not contrary to the weight of the evidence. Nguyen, 309 A.D.2d at 1270.

Petitioner is barred from bringing his claim for insufficiency of the evidence on federal habeas review because the Appellate Division's decision rests on an adequate and independent state

procedural ground. <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003); <u>Coleman v. Thompson,</u> 501 U.S. 722, 729 (1991). Petitioner has not established the requisite cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, therefore, this claim is denied. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). Additionally, Petitioner's claim that the verdict was against the weight of the evidence is not a basis for federal habeas relief. *Ex parte* <u>Craig</u>, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255 (1923); accord, e.g., <u>Garrett v. Perlman</u>, 438 F.Supp.2d at 470 ("In making a "weight of the evidence" argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available.") (citation omitted). Therefore, Petitioner's claims for habeas relief are denied on these grounds.

## F. <u>Ineffective Assistance of Counsel</u>

Petitioner also claims that he received ineffective assistance of trial and appellate counsel. Pet. Appendix ¶ IV (2),(7), (8).

### 1. **Trial Counsel**

Petitioner claims that he received ineffective assistance of trial counsel based on the following alleged errors of counsel: (1) counsel's failure to advise Nguyen that it was in his interest to accept a plea bargain; (2) counsel's failure to object to the

court's instruction, with respect to Penal Law § 20.00, that the jury need not find that Petitioner was inside the Lam's house to convict him; (3) counsel's failure to obtain a fingerprint expert; and (4) counsel's failure to timely raise the issues he raised in his C.P.L. § 330.30 motion[5]. Pet. Appendix ¶ IV (2), (8). Petitioner raised these claims in his C.P.L. § 440.10 motion.

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense. The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." Strickland v. Washington, 466 U.S. 668, 685 (1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687.

To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." Id.,

---

[5] Petitioner also submitted an amended petition asserting three additional claims of ineffective assistance of trial counsel: (1) counsel's failure to expose a key prosecution witness' perjury; (2) counsel's failure to object to hearsay by an unidentified witness; and (3) counsel's failure to request an accomplice liability charge. However, after review of the record, this court finds that the amended petition was not timely, and the claims asserted by Petitioner do not relate back to the claims for ineffective assistance of counsel in his original petition, as they require proof of additional facts which differ in "time and type" from the facts in the original petition. 28 U.S.C. § 2244 (d) (1); Fed. R. Civ. P. 15(c); Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 816 (2nd Cir. 2000); Mayle v. Feliz, 545 U.S. 644, 650 (2005). In any event, Petitioner's claims are unexhausted, but procedurally barred, because he did not raise these issues in state court, and he is now procedurally barred from raising them because he could have raised them in his first C.P.L. § 440.10 motion. See Grey v. Hoke, 933 F.2d 117, 120-21 (2nd Cir. 1991); C.P.L. § 440.10 (3)(c). Petitioner has not established the requisite cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, therefore, his claims are denied. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

466 U.S. at 687.  To determine whether a counsel's conduct is deficient, "[t]he court must...determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id., 466 U.S. at 690.  In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort...to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 688-89.  The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [] have...a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." Id. at 695-96.

Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome . . . would have been different[.]" McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome," Strickland, 466 U.S. at 688; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id., 466 U.S. at 693.  Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

First, with respect to Petitioner's claims that counsel erred in (1) failing to object to the trial court's instruction on Penal Law § 20.00, (2) failing to obtain a fingerprint expert, and (3) failing to timely assert the issues raised in his C.P.L. § 330.30 motion, the Supreme Court, Monroe County, held that Nguyen's claims were procedurally barred under C.P.L. § 440.10 (2)(c), because he could have brought these issues on direct appeal, but he did not. See T. Appendix R. Petitioner did not appeal this order, and therefore his claims are unexhausted. However, because it is clear that Petitioner cannot now bring these claims in the New York Courts, they are deemed exhausted but procedurally barred from federal habeas review. See Grey, 933 F.2d at 120-21. Petitioner has not established the requisite cause and prejudice or a fundamental miscarriage of justice to overcome this procedural bar, and his claims are denied. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

With respect to Petitioner's claim that counsel erred in failing to properly advise him to take a plea offer, the Supreme Court, Monroe County, held that because Petitioner's proof consisted of unsworn allegations, and because he did not provide evidence that he would have accepted the plea offer if advised differently, he did not adequately support his claim that he was deprived of effective assistance of counsel. See T. Appendix R. Petitioner did not appeal this order and therefore, it is unexhausted.

The AEDPA provides that an "application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); accord, e.g., Rhines v. Weber, 544 U.S. 269, 277 (2005). Neither the Supreme Court nor the Second Circuit has adopted a standard for district courts to exercise discretionary review. However, the majority of district courts in this circuit have followed a "patently frivolous" standard, Colorio v. Hornbeck, No. 05 CV 4984(NG)(VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing Brown v. State of New York, 374 F. Supp.2d 314, 318 (W.D.N.Y. 2005)(citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,'" Hernandez v. Lord, No. 00-CIV-2306, 2000 WL 1010975, at *4 n. 8 (S.D.N.Y. Jul. 21, 2000). Nevertheless, Petitioner's claim fails under either standard as it is both "patently frivolous" and entirely meritless. See Severino v. Phillips, No. 05 Civ. 475(DAB), 2008 WL 4067421, at *14 (S.D.N.Y. Aug. 25, 2008); Brown v. State, 374 F. Supp.2d at 318.

The Monroe County Court relied on United States v. Gordon for the proposition that without providing objective evidence that he would have accepted the plea offer if he had been advised differently, Nguyen's claim for ineffective assistance of counsel was meritless. 156 F.3d 376, 380-1 (2nd Cir. 1998). Petitioner, in

his C.P.L. § 440.10 motion and in this petition, conclusively states that he was improperly advised and that he would have accepted a plea offer if he knew of the potential consequences following a trial. However, Petitioner has not supported his claim with any objective facts. Petitioner's statement that counsel was ineffective in this regard, without objective evidence, is insufficient to support his claim for ineffective assistance of counsel because Petitioner has neither shown that counsel was deficient or that the outcome would have been different. Therefore, Petitioner's claim for ineffective assistance of trial counsel is denied.

### 2. Appellate Counsel

Petitioner also claim that he received ineffective assistance of appellate counsel because counsel failed to raise the following three issues: (1) the trial court improperly instructed the jury with respect to Penal Law § 20.00; (2) the trial court improperly submitted an annotated verdict sheet to the jury; and (3) Nguyen received ineffective assistance of trial counsel because counsel failed to object to the submission of the verdict sheet and the Penal Law § 20.00 charge. Appendix ¶ IV (7). Petitioner raised these claims in his first petition for a writ of error coram nobis and the Appellate Division denied his petition. People v. Nguyen, 20 A.D.3d 947 (4th Dept. 2005), *leave denied*, 5 N.Y.3d 833 (N.Y. 2005). This Court finds that Petitioner received effective

assistance of appellate counsel, and accordingly, his petition for a writ of habeas corpus is denied.

Strickland also applies to claims for ineffective assistance of appellate counsel. In addition, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a non-frivolous argument, for counsel does not have a duty to advance every non-frivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528 (2nd Cir.) cert. denied, 513 U.S. 820 (1994).

In this case, appellate counsel raised six issues on appeal and was successful in his argument that the sentence was improper. Petitioner's sentence was then modified by the Appellate Division. Because counsel is not required to raise every non-frivolous issue on appeal, it cannot be said that his performance was deficient because he successfully raised some issues and not others. Likewise, Petitioner has not established that the outcome of his appeal would have been different had these issues been raised.

## V. **CONCLUSION**

For the reasons stated above, petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b),

this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           November 25, 2009